# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAMERON YERIGAN,<br><br>Plaintiff,<br><br>v.<br><br>UNITED PARCEL SERVICE, INC.,<br><br>Defendant. | Case No. 25-cv-0586-BAS-DEB<br><br>**ORDER REQUIRING SUPPLEMENTAL BRIEFING ON DEFENDANT'S MOTION TO DISMISS** |

Presently before the Court is Defendant United Parcel Service, Inc.'s ("UPS") motion to dismiss Plaintiff's first amended complaint. (ECF No. 20.) Plaintiff Cameron Yerigan is self-represented.

Defendant moves to dismiss under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for a more definite statement under Rule 12(e). (Mot. 3:7–4:23, ECF No. 20.) Defendant's six-page motion contends that Plaintiff's claims are insufficiently clear to identify. But the Court has identified several allegations in the complaint.

To avoid duplicative motion practice and in the interest of justice, the Court permits Defendant to file a supplemental brief in support of its motion to dismiss in accordance with this Order.

- 1 -

25cv0586

# I.    BACKGROUND

## A.    Procedural Background

Plaintiff filed a form complaint against Defendant in San Diego Superior Court. (Form Complaint at 33–34, ECF No. 1-4.) Defendant removed this action pursuant to 28 U.S.C. § 1332 diversity jurisdiction. (Notice of Removal, ECF No. 1.)[1] Defendant then filed a motion to dismiss for failure to state a claim, or in the alternative, a motion for a more definite statement. (ECF No. 5.) Plaintiff did not oppose, and the Court ordered Plaintiff to show cause for failure to file an opposition. (ECF No. 7.) The motion was then fully briefed. (ECF Nos. 8, 9.)

The Court granted Defendant's motion for a more definite statement under Rule 12(e), and the Court gave Plaintiff a deadline by which to file a first amended complaint. (ECF No. 11.) The Court warned Plaintiff that if he does not file a first amended complaint by the deadline, the Court would dismiss the action without prejudice. (Id.)

Plaintiff's deadline passed, and he did not file a first amended complaint; therefore, the Court dismissed the action without prejudice. (ECF No. 12.) Several days later, Plaintiff filed a letter to reopen the case. (ECF No. 14.) The Court construed the letter as a motion to reopen the case, and the Court reopened the case accordingly. (ECF No. 17.) The Court set a new deadline for Plaintiff to file a first amended complaint. (Id.)

Soon after, Plaintiff filed a first amended complaint. (ECF No. 18.) Plaintiff also moved for leave to file electronically (ECF No. 19), which the Court granted (ECF No. 22).

Defendant then filed a motion to dismiss for failure to state a claim. (ECF No. 20.) Plaintiff again failed to timely oppose; the Court ordered Plaintiff to show cause for failure to respond. (ECF No. 23.) Plaintiff filed a letter in response to the Court's order, which the Court construed as an opposition. (ECF No. 24.) Defendant did not file a reply.

---

[1] Plaintiff seeks more than $75,000 in damages; Plaintiff is a California citizen; and UPS is a citizen of Ohio and Georgia. (Notice of Removal ¶¶ 21, 24, 29, ECF No. 1.)

25cv0586

## B.     Factual Background

Plaintiff's complaint alleges the following factual narrative. (First Am. Compl., ECF. No. 18.) Mr. Yerigan worked at UPS as a driver in job classification 22-4, based out of the San Diego facility. (*Id*. at 5.) Mr. Yerigan was a member of Teamsters Union Local 542. (*Id*.)

### Pay Grievance (August 2022)

In August 2022, Mr. Yerigan filed a grievance after UPS moved his driving position and reduced his hourly pay from $27.50 to $20.50 without red-circling his pay as he alleges was required under the Collective Bargaining Agreement ("CBA")—specifically Article 41 of the CBA. (*Id*. at 1.) He contends this pay reduction constituted a contract violation, entitling him to $60,000 in base damages, with a statutory penalty of three times that amount ($180,000) under wage theft provisions. (*Id*.) UPS allegedly told Mr. Yerigan the problem would be fixed but never corrected it. (*Id*.)

### Windshield Incident (November 2022)

In November 2022, Mr. Yerigan's windshield was smashed in the UPS company parking lot. (*Id*.) The property manager for the building filed a police report. (*Id*.) Mr. Yerigan alleges UPS was liable for the damage under the terms of the union contract, and that the company's only response was to install cameras outside the building. (*Id*.) Mr. Yerigan paid around $329.00 out of pocket for the repair. (*Id*.) Mr. Yerigan alleges this incident was connected to his pay grievance. (*Id*.)

### March 1, 2023 — Meeting with Mr. Sanders

Given that UPS had still not addressed the pay grievance, Mr. Yerigan went to supervisor Josh Sanders' office on March 1, 2023, to discuss the ongoing pay correction issue and the windshield incident. (*Id*.) Mr. Sanders allegedly became enraged, kicked Mr. Yerigan out of his office, and physically blocked the doorway, forcing Mr. Yerigan to ask to be let through. (Id.) A coworker named Andy York was present and witnessed the incident. (*Id*.) Mr. Yerigan alleges Mr. Sanders then made false accusations against him. (*Id*.)

- 3 -

After the meeting, Mr. Yerigan resumed his normal work duties, completing a pre-trip inspection on his vehicle. (*Id*.) As Mr. Yerigan was leaving the building, Mr. Sanders stopped him and ordered him back to the office to receive a written warning letter. (*Id*. at 2.) Mr. Yerigan complied. (*Id*.) At that point, Mr. Yerigan asked for a union representative, which Mr. Sanders denied—a right Mr. Yerigan contends he was entitled to under Article 4 of the CBA and the *Weingarten* doctrine. (*Id*.) In the office, manager Stephanie was also present. (*Id*.) Mr. Sanders proceeded to read Mr. Yerigan the company's anti-harassment policy, apparently assuming the position that it was Mr. Yerigan who had harassed Mr. Sanders—a characterization Mr. Yerigan disputes. (*Id*.) Mr. Yerigan was then sent home without pay. (*Id*.) He did not return to work for several days, during which time he was ill—vomiting due to the stress of the situation—and obtained a doctor's note excusing him for five days. (*Id*.)

**March 9, 2023 — Follow-Up Meeting**

Mr. Sanders texted Mr. Yerigan and asked him to come in on March 9, 2023, to discuss the March 1 incident. (*Id*.) Mr. Yerigan complied. (*Id*.) A security guard named Rick was also present. (*Id*.) The meeting covered the windshield incident, parking lot safety, and the ongoing pay issues. (*Id*.) Mr. Yerigan alleges nothing was resolved at this meeting either, and he was again sent home without pay. No discipline was formally issued at this meeting. (*Id*.)

**HR Communication and Ethics Complaint**

Following the March 9 meeting, Mr. Yerigan texted HR representative Abby to report his concerns about the windshield, the pay issues, and the retaliation he felt he was experiencing. (*Id*.) He also filed a retaliation claim under Article 37 of the CBA at this time. (*Id*.) Abby advised him to file an ethics point complaint through a third-party reporting system. Mr. Yerigan did so. (*Id*.) He alleges that this ethics complaint is what prompted Mr. Sanders to escalate the discipline from a written warning to a full discharge—in other words, that the filing of the ethics complaint was the direct cause of his termination. (*Id*.)

25cv0586

**Termination (March 14, 2023)**

On March 14, 2023, Mr. Yerigan returned to work as normal. With security guard Rick and Mr. Sanders present, Mr. Yerigan was called into a meeting at which he was discharged. (*Id.*) He characterizes this as a wrongful and unlawful discharge in violation of the CBA. He was not paid out on the day of termination. (*Id.*)

**Grievance Filing Regarding Disciplinary Procedure (March 29, 2023)**

Mr. Yerigan filed Grievance No. 46121 with Teamsters Local 542 on March 29, 2023, citing a violation of Article 28, Section 2 of the CBA. (*Id.*) He contended that UPS failed to follow the 10-day rule for disciplinary action—the incident occurred March 1, an investigation meeting was held March 9, but he was not discharged until March 14, which he argues exceeded the contractual timeframe and rendered the disciplinary action waived under the CBA. (*Id.*)

**Damages**

Mr. Yerigan seeks the following relief: back pay and lost wages calculated at three times the base contract violation amount (approximately $180,000 for the pay reduction alone); lost pension benefits for up to five years; reimbursement of medical insurance costs during the period of unemployment; the $329.00 windshield repair cost; and general make-whole relief for all losses suffered as a result of the alleged wrongful discharge and contract violations. (*Id.* at 3–4.)

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. A Rule 12(b)(6) motion tests that standard by seeking dismissal for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12.

To survive a motion to dismiss, a complaint must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While legal conclusions may provide the framework of a complaint, "they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S.

662, 679 (2009). The plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"—in other words, enough to render the claim plausible. *Id*. at 678 (citing *Twombly*, 550 U.S. at 570).

In ruling on a motion to dismiss, the court accepts the complaint's factual allegations as true and construes the pleadings in the light most favorable to the nonmoving party. *See Manzarek v. St. Paul Fire & Marine Ins. Co*., 519 F.3d 1025, 1031 (9th Cir. 2008). The court may not look beyond the complaint. *See United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003).

## III.    ANALYSIS

A court liberally construes the filings of a self-represented plaintiff and affords the plaintiff the benefit of any reasonable doubt. *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). Further, "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Florer v. Congregation Pidyon Shevuyim, N.A*., 639 F.3d 916, 923 n.4 (9th Cir. 2011) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

Although Plaintiff's complaint does not identify specific causes of action, it contains detailed factual allegations from which the Court can discern the following potential claims. Construing the complaint liberally and out of an abundance of caution, the Court identifies the following causes of action:

1.    Breach of Collective Bargaining Agreement, Section 301 of the Labor Management Relations Act (LMRA); specifically, Articles 4, 17, 28, 37, 41.

2.    Unpaid Wages under the California Labor Code.

3.    Negligence, Premises Liability under California Law.

Applying the liberal pleading standard afforded to self-represented plaintiffs, the Court is inclined to allow this action to proceed.

- 6 -

25cv0586

## IV.    CONCLUSION

Accordingly, Defendant shall file a supplemental brief to the motion to dismiss on or before **April 29, 2026**. Should Plaintiff wish to respond to Defendant's supplemental brief, he must do so on or before **May 13, 2026**. And if Defendant chooses to reply, that brief will be due on **May 20, 2026**.

**IT IS SO ORDERED.**

**DATED: April 15, 2026**

**Hon. Cynthia Bashant, Chief Judge**
**United States District Court**

25cv0586