# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

CAMERON YERIGAN,

Plaintiff,

v.

UNITED PARCEL SERVICE, INC.,

Defendant.

Case No. 25-cv-0586-BAS-DEB

**ORDER GRANTING WITH PREJUDICE DEFENDANT'S MOTION TO DISMISS (ECF No. 20)**

Presently before the Court is Defendant United Parcel Service, Inc.'s ("UPS") motion to dismiss Plaintiff's first amended complaint. (ECF No. 20.) Plaintiff Cameron Yerigan is self-represented.

Defendant moves to dismiss under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for a more definite statement under Rule 12(e). The Court finds Defendant's motion suitable for determination on the papers submitted. *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7.1(d)(1). Upon review, the Court **GRANTS with prejudice** Defendant's motion to dismiss.

- 1 -

25cv0586

## I.    BACKGROUND

### A.    Procedural Background

Plaintiff filed a form complaint against Defendant in San Diego Superior Court. (Form Compl. at 33–34, ECF No. 1-4.) Defendant removed this action pursuant to 28 U.S.C. § 1332 diversity jurisdiction. (Notice of Removal, ECF No. 1.)[1] Defendant then filed a motion to dismiss for failure to state a claim, or in the alternative, a motion for a more definite statement. (ECF No. 5.) Plaintiff did not oppose, and the Court ordered Plaintiff to show cause for failure to file an opposition. (ECF No. 7.) The motion to dismiss was then fully briefed. (ECF Nos. 8, 9.)

The Court granted Defendant's motion for a more definite statement under Rule 12(e), and the Court gave Plaintiff a deadline by which to file a first amended complaint. (ECF No. 11.) The Court warned Plaintiff that if he does not file a first amended complaint by the deadline, the Court would dismiss the action without prejudice. (*Id*.)

Plaintiff's deadline passed, and he did not file a first amended complaint; therefore, the Court dismissed the action without prejudice. (ECF No. 12.) Several days later, Plaintiff filed a letter to reopen the case. (ECF No. 14.) The Court construed the letter as a motion to reopen the case, and the Court reopened the case accordingly. (ECF No. 17.) The Court set a new deadline for Plaintiff to file a first amended complaint. (*Id*.)

Soon after, Plaintiff filed a first amended complaint. (ECF No. 18.) Plaintiff also moved for leave to file electronically (ECF No. 19), which the Court granted (ECF No. 22).[2]

Defendant then filed another motion to dismiss for failure to state a claim, which is addressed in this order. (ECF No. 20.) Plaintiff again failed to timely oppose; the Court ordered Plaintiff to show cause for failure to respond. (ECF No. 23.) Plaintiff filed a letter

---

[1] Plaintiff seeks more than $75,000.00 in damages; Plaintiff is a California citizen; and UPS is a citizen of Ohio and Georgia. (Notice of Removal ¶¶ 21, 24, 29, ECF No. 1.)

[2] Plaintiff has since filed a motion for exemption from electronic filing because of difficulty with the e-file process. (ECF No. 34.) The Court granted Plaintiff's motion and directed the Clerk of Court to accept paper filings from Plaintiff once again. (ECF No. 37.)

25cv0586

in response to the Court's order, which the Court construed as an opposition. (ECF No. 24.) Defendant did not file a reply.

Defendant's six-page motion to dismiss contended that Plaintiff's claims were insufficiently clear to identify. (ECF No. 20.) But the Court identified several allegations in the complaint. *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (noting that a court liberally construes the filings of a self-represented plaintiff and affords the plaintiff the benefit of any reasonable doubt). Construing the complaint liberally, the Court identified the following causes of action:

1.   Breach of Collective Bargaining Agreement, Section 301 of the Labor Management Relations Act ("LMRA"); specifically, Articles 4, 17, 28, 37, 41.

2.   Unpaid Wages under the California Labor Code.

3.   Negligence, Premises Liability under California Law.

To avoid duplicative motion practice and in the interest of justice, the Court permitted Defendant to file a supplemental brief in support of its motion to dismiss, which Defendant did. (ECF No. 30.) Plaintiff responded. (ECF No. 35.) And Defendant replied. (ECF No. 38.)

**B.    Factual Background**

To the best of the Court's understanding, Plaintiff's complaint alleges the following factual narrative. (First Am. Compl., ECF. No. 18.) Mr. Yerigan worked at UPS as a driver in job classification 22-4, based out of the San Diego facility. (*Id*. at 5.) Mr. Yerigan was a member of Teamsters Union Local 542. (*Id*.)

**Pay Grievance (August 2022)**

In August 2022, Mr. Yerigan filed a grievance after UPS moved his driving position and reduced his hourly pay from $27.50 to $20.50 without red-circling his pay as he alleges was required under the Collective Bargaining Agreement ("CBA")—specifically Article 41 of the CBA. (*Id*. at 1.) He contends this pay reduction constituted a contract violation, entitling him to $60,000.00 in base damages, with a statutory penalty of three times that

25cv0586

amount ($180,000.00) under wage theft provisions. (*Id.*) UPS allegedly told Mr. Yerigan the problem would be fixed but never corrected it. (*Id.*)

### Windshield Incident (November 2022)

In November 2022, Mr. Yerigan's windshield was smashed in the UPS company parking lot. (*Id.*) The property manager for the building filed a police report. (*Id.*) Mr. Yerigan alleges UPS was liable for the damage under the terms of the union contract, and that the company's only response was to install cameras outside the building. (*Id.*) Mr. Yerigan paid around $329.00 out of pocket for the repair. (*Id.*) Mr. Yerigan alleges this incident was connected to his pay grievance. (*Id.*)

### Meeting with Mr. Sanders (March 1, 2023)

Given that UPS had still not addressed the pay grievance, Mr. Yerigan went to supervisor Josh Sanders' office on March 1, 2023, to discuss the ongoing pay correction issue and the windshield incident. (*Id.*) Mr. Sanders allegedly became enraged, kicked Mr. Yerigan out of his office, and physically blocked the doorway, forcing Mr. Yerigan to ask to be let through. (*Id.*) A coworker named Andy York was present and witnessed the incident. (*Id.*) Mr. Yerigan alleges Mr. Sanders then made false accusations against him. (*Id.*)

After the meeting, Mr. Yerigan resumed his normal work duties, completing a pre-trip inspection on his vehicle. (*Id.*) As Mr. Yerigan was leaving the building, Mr. Sanders stopped him and ordered him back to the office to receive a written warning letter. (*Id.* at 2.) Mr. Yerigan complied. (*Id.*) At that point, Mr. Yerigan asked for a union representative, which Mr. Sanders denied—a right Mr. Yerigan contends he was entitled to under Article 4 of the CBA and the *Weingarten* doctrine. (*Id.*) In the office, manager Stephanie was also present. (*Id.*) Mr. Sanders proceeded to read Mr. Yerigan the company's anti-harassment policy, apparently assuming the position that it was Mr. Yerigan who had harassed Mr. Sanders—a characterization Mr. Yerigan disputes. (*Id.*) Mr. Yerigan was then sent home without pay. (*Id.*) He did not return to work for several days, during which time he was

25cv0586

ill—vomiting due to the stress of the situation—and obtained a doctor's note excusing him for five days. (*Id.*)

**Follow-Up Meeting (March 9, 2023)**

Mr. Sanders texted Mr. Yerigan and asked him to come in on March 9, 2023, to discuss the March 1 incident. (*Id.*) Mr. Yerigan complied. (*Id.*) A security guard named Rick was also present. (*Id.*) The meeting covered the windshield incident, parking lot safety, and the ongoing pay issues. (*Id.*) Mr. Yerigan alleges nothing was resolved at this meeting either, and he was again sent home without pay. (*Id.*) No discipline was formally issued at this meeting. (*Id.*)

**HR Communication and Ethics Complaint**

Following the March 9 meeting, Mr. Yerigan texted HR representative Abby to report his concerns about the windshield, the pay issues, and the retaliation he felt he was experiencing. (*Id.*) He also filed a retaliation claim under Article 37 of the CBA at this time. (*Id.*) Abby advised him to file an ethics point complaint through a third-party reporting system. (*Id.*) Mr. Yerigan did so. (*Id.*) He alleges that this ethics complaint is what prompted Mr. Sanders to escalate the discipline from a written warning to a full discharge—in other words, that the filing of the ethics complaint was the direct cause of his termination. (*Id.*)

**Termination (March 14, 2023)**

On March 14, 2023, Mr. Yerigan returned to work as normal. (*Id.*) With security guard Rick and Mr. Sanders present, Mr. Yerigan was called into a meeting at which he was discharged. (*Id.*) He characterizes this as a wrongful and unlawful discharge in violation of the CBA. He was not paid out on the day of termination. (*Id.*)

**Grievance Filing Regarding Disciplinary Procedure (March 29, 2023)**

Mr. Yerigan filed Grievance No. 46121 with Teamsters Local 542 on March 29, 2023, citing a violation of Article 28, Section 2 of the CBA. (*Id.*) He contended that UPS failed to follow the 10-day rule for disciplinary action—the incident occurred March 1, an investigation meeting was held March 9, but he was not discharged until March 14, which

25cv0586

he argues exceeded the contractual timeframe and rendered the disciplinary action waived under the CBA. (*Id*.)

### Damages

Mr. Yerigan seeks the following relief: back pay and lost wages calculated at three times the base contract violation amount (approximately $180,000.00 for the pay reduction alone); lost pension benefits for up to five years; reimbursement of medical insurance costs during the period of unemployment; the $329.00 windshield repair cost; and general make-whole relief for all losses suffered as a result of the alleged wrongful discharge and contract violations. (*Id*. at 3–4.)

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A Rule 12(b)(6) motion tests that standard by seeking dismissal for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

To survive a motion to dismiss, a complaint must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While legal conclusions may provide the framework of a complaint, "they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"—in other words, enough to render the claim plausible. *Id*. at 678 (citing *Twombly*, 550 U.S. at 570).

In ruling on a motion to dismiss, the court accepts the complaint's factual allegations as true and construes the pleadings in the light most favorable to the nonmoving party. *See Manzarek v. St. Paul Fire & Marine Ins. Co*., 519 F.3d 1025, 1031 (9th Cir. 2008). The court may not look beyond the complaint. *See United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003).

If dismissal is warranted, the court considers whether to grant leave to amend. Leave should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). At the same

- 6 -

25cv0586

time, "a district court may dismiss without leave where a plaintiff's proposed amendments would fail to cure the pleading deficiencies and amendment would be futile." *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011) (citation omitted). "[T]he district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1072 (9th Cir. 2008) (quotation omitted).

## III.   ANALYSIS

### A.   Federal Law Preemption

Actions "alleging a violation of a provision of a labor contract must be brought under § 301 [of the LMRA] and be resolved by reference to federal law." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210–11 (1985); *see* 29 U.S.C. § 185(a).

Accordingly, preemption under § 301 requires a two-step analysis. *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007). Step one, the Court must determine "whether the asserted cause of action involves a right conferred upon an employee by virtue of state law, not by a CBA." *Id.* If the right is conferred by a CBA, preemption applies, and the Court's analysis ends there. *See id.*

If the right is conferred by state law, at step two, the Court must determine whether the plaintiff's claim is nevertheless "substantially dependent on analysis of a [CBA]." *Id.* (internal quotation marks omitted). If the claim requires the court to "interpret," rather than merely "look to," the CBA, then the claim is substantially dependent on the CBA, and is preempted by § 301. *Id.* at 1060.

Here, the Court finds Plaintiff's claims arise from and/or are substantially dependent on the CBA, as alleged by Plaintiff, and thus federal law applies. Plaintiff alleges breach of the CBA under Articles 4, 17, 28, 37, 41. (First Am. Compl. at 1–2, ECF No. 18.) Specifically, Plaintiff's claim of reduction of pay arises out of the CBA. (*Id.*; *see also* Supp. Opp'n at 2, ECF No. 35.) Plaintiff agrees that his pleadings arise from the CBA, stating: ". . . I did already give court that clause all my grievances have the article and after the article

25cv0586

says specifically all that apply just incase something is not attached and its covered by the cba." (Supp. Opp'n at 2.)

Finally, Plaintiff's claim regarding the windshield of his vehicle is either covered by the CBA or requires interpretation of the CBA. Plaintiff states someone told him UPS is liable for any damage "per agreement," and Plaintiff alleges that this "was a contract with the union, and it is my right and entitlement to receive what my terms and conditions are and are fulfilled." (First Am. Compl. at 1.) In any case, Plaintiff's allegation requires interpretation of the CBA to recover for any damage to his vehicle in the parking lot. Plaintiff does not lay out factual allegations to support a retaliation claim, and to the extent he does, that claim would also be covered by the CBA; as Plaintiff notes, "[K]inda ironic after UPS sham my pay grievance and used mortification saying 'they were going to fix it' my car gets vandalized, um ya, that's massive harassment and retaliation witch cba does cover article 37." (Supp. Opp'n at 3.)

The CBA, rather than any separate state law, is the only source of the rights Plaintiff seeks to vindicate. Thus, federal law pursuant to § 301 applies to all of Plaintiff's claims.

**B.  Hybrid Claim**

An employee may bring a claim against his employer for breach of a CBA. *See Smith v. Evening News Assn.*, 371 U.S. 195, 200 (1962). Ordinarily, however, an employee is required to exhaust any grievance or arbitration remedies provided in the CBA. *See Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652–53 (1965) ("A contrary rule which would permit an individual employee to completely sidestep available grievance procedures in favor of a lawsuit has little to commend it."). An employee will be bound by the arbitrator's result, according to the finality provisions of the agreement. *See Steelworkers v. Enterprise Corp.*, 363 U.S. 593, 599 (1960) ("[T]he question of interpretation of the collective bargaining agreement is a question for the arbitrator.").

Here, Plaintiff alleges that he filed grievances with the union, for example, Grievance No. 46121. (First Am. Compl. at 1.) Plaintiff must exhaust the grievance process before filing in federal court. To the extent Plaintiff exhausted the claim, he is bound by

25cv0586

the arbitration result; thus, he may not sue Defendant for breach of the CBA in federal court.

Nevertheless, Plaintiff can bring suit in federal court by alleging a "hybrid" claim. In *Vaca* and *Hines*, the Supreme Court recognized that a plaintiff should have the ability to bring suit in federal court when the union representing the employee in the grievance/arbitration procedure acts in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation. *See Vaca v. Sipes*, 386 U.S. 171, 187 (1967); *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 556 (1976). In such an instance, an employee may sue both the employer and the union, notwithstanding the outcome or finality of the grievance or arbitration proceeding. *See id*. In short, a claim is hybrid when it alleges (1) "unfair labor practices by an employer" and (2) "a union's breach of duty to fairly represent all of its members implicating both the LMRA and the National Labor Relations Act." *See Prazak v. Loc. 1 Int'l Union of Bricklayers & Allied Crafts*, 233 F.3d 1149, 1151 (9th Cir. 2000) (citation modified).

The Court construes Plaintiff's briefing as a hybrid claim, even though the union is not a party in this suit. *Del Costello v. Int.'l Broth. of Teamsters, et al.*, 462 U.S. 151, 162 (1983) ("In a hybrid action, the employee generally sues the union and the employer, though not necessarily both[.]").

### C.    Statute of Limitations for a Hybrid Claim

Under federal law, a hybrid complaint must be filed within six months of the alleged violation. *Id*. at 172. The six-month period begins to run when the employee "knows or should know of the alleged breach of duty of fair representation by a union." *Galindo v. Stoody Co.*, 793 F.2d 1502, 1509 (9th Cir. 1986).

Here, the Court has no information about the representation of the union, as it construes the hybrid nature of the claim. To the extent a hybrid claim exists, Plaintiff's deadline to file was around 2023, making Plaintiff's state court action in 2025 untimely. Accordingly, the six-month limitation period bars any hybrid claim Plaintiff may put forth.

25cv0586

## IV. CONCLUSION

Upon review, Plaintiff's claims are barred under the statute of limitations or exhaustion requirements. No amendment could save these claims; further leave to amend would be futile. The Court **GRANTS with prejudice** Defendant's motion to dismiss. (ECF No. 20.)

**IT IS SO ORDERED.**

DATED: June 16, 2026

**Hon. Cynthia Bashant, Chief Judge**
**United States District Court**

25cv0586